The last case for argument, United States v. Armand, Ms. Delgasheva. Good afternoon, Your Honors. May it please the Court, my name is Yelena Delgasheva and I represent Appellant Patrick Armand. I will argue that the District Court in this case impermissibly presumed... Could you speak up, I can't hear you. Yes. I will argue that the District Court impermissibly assumed the guideline sentence to be reasonable. I want to focus first, but only first, on one sentence, one thing that the Court said. The Court said, I did make a slight adjustment that has to do with the bracket that I was in, that's why it's 104. Basically, the Court said that it fit the sentence within the guideline range. And I think that's an indication that the Court did not give, in this case, consideration to what the mitigating and aggravating factors were, but simply wanted to sentence defendants somewhere within the guideline range. But looking beyond that one sentence, the record in this case doesn't show that the Court actually exercised its discretion and determined that a 104-month sentence is sufficient but not greater than necessary to conform with the purposes of sentencing. The defendant was a low-level drug dealer. He was suffering from post-traumatic stress disorder, untreated. It was a serious illness, and he's been suffering it, from what it seems, since he was a child, 8 years old. At that time, it seemed to have started, the symptoms started, when he found out by watching television on Christmas Day that his mother was raped and shot while he and his 7-year-old brother were waiting at home to open their Christmas presents. And the symptoms seemed to have been aggravated over the years. He was over 40 at the time that he was sentenced, and he never knew he was suffering from any mental disorder until his initial sentencing. But the symptoms seemed to have been aggravated by the fact that he lived in violent communities. He's seen people murdered. Several of his uncles were murdered. One of his uncles was actually murdered in his grandmother's backyard. He was beaten by gangs because he was not a member of a gang but lived in gang territory. His mental disorder could have been and probably was linked to some of his behavior. There are statistics showing that veterans who suffer from PTSD use marijuana to control it. Mr. Armand was suffering from marijuana abuse. He also had anger control issues, and there are statistics that show people suffering from PTSD have difficulty controlling their anger and do get involved in domestic violence, as Mr. Armand was. Additionally, people suffering from PTSD, and especially when it doesn't get treated, tend to get involved in high-risk behavior such as violating the law and getting in trouble with the law. I've got to say, this is an argument in mitigation, right? Yes, Your Honor. Another way of interpreting that is that somebody in those circumstances poses a greater risk to the public. Your Honor, not if he gets effective treatment. A big if, right? Yes, Your Honor, but his history shows that while he did have several domestic batteries and criminal damage to his ex-girlfriend's property, so he had a domestic battery in 2003, and he had a domestic battery in 2010, and at the same time he had criminal damage to his ex-girlfriend's property. But before that, the last conviction he had was actually, I believe, in 1998. He did have several convictions thereafter, but they were for not very serious offenses, driving without a license and driving uninsured vehicles. So he did not have a continuous history of serious violations of the law. Since his age, he was improving himself and trying to get on the right track in life. This crime was nonviolent. There were two occasions in which he sold drugs, cocaine, crack cocaine, and was supposed to be ex-deceived to an undercover informant. But he did not have a history of violence, not since 1998, other than the two domestic batteries. At the time of re-sentencing, he didn't show that he was at a high risk, and I think if he would have received effective mental health treatment, the risk would actually, the recidivism would go down substantially. And what we're arguing to the court is that it was unlikely that he would receive effective mental health treatment while he was incarcerated. It seems statistically only a small percentage of inmates get the mental health treatment they need. While they're on supervised release, the options are numerous. They can be in the hospital if they need to be. They can receive effective intensive mental health treatment. There's a lot of options, so it seems likely that the only time he's going to get the treatment that he needs, which would, I believe, effectively reduce the risk that he will ever get involved in anything illegal again, would be while he's on supervised release. While he's incarcerated, I think his mental illness would be aggravated, so I think the more he spends in jail, the more likely he would create a risk to society. The court seems to have focused and repeatedly said that the felon caused harm to himself, damaged himself, and people close to him, and that seemed to be the focus in sentencing. But if he already hurt himself, and the court says, I understand that you are suffering from the fact that you hurt people close to you, so he's being already punished by the fact that he hurt himself and his loved ones. I don't see that as a reason to give him more sentence. That's a reason to give him lesser sentence because he's already punishing himself by the fact that he hurt himself in getting in trouble again and hurt his loved ones. He was also, there was evidence presented that he's a very committed father. He went to California to save his daughter Ayana from, she was kidnapped and forced into prostitution. He basically saved her from the lives in the streets. He's been a committed son since basically the age of eight or nine when his mother was raped and shot. He has been one of the main people taking care of his mom, so he grew up fast. So there was a lot of mitigation presented in this case. The court made various comments and subjects. It didn't seem like what the government says in the brief that the court questioned that Mr. Rahman has mental illness. The court went on and focused on the treatment and the fact that treatment, mental health treatment helps a lot of people, but it does require effort on the part of the patient. That seems to be in mitigation. If a lot of people can be helped, then it seems there's a high chance that Mr. Rahman could be helped by mental health treatment. So I don't believe the court took that into aggravation. Additionally, the court agreed with defendant that over the age of 40, and Mr. Rahman was over the age of 40, that the risk of recidivism decreases, but also the court did not seem to have taken that into consideration. Bottom line, the court said, I'm giving you a 104-month sentence, which is a downward departure from a 108-month sentence that he received at the original sentencing because you're doing a little bit better now than you did before, and I'm trying to fit the sentence within the guideline range. In terms of Mr. Rahman's pretrial violations, the government stated several times in its brief that the court says, you're getting in trouble again and again and again, and part of it, I believe, the court was referring to his pretrial violations. He had numerous pretrial violations, but they weren't particularly serious, most of them. A lot of them involved minor things like being four minutes late or being eight minutes late, or going outside to throw out the garbage, or going on a different floor of the building to do laundry. You're in your rebuttal time, you know. I'm sorry, Your Honor? You're in your rebuttal time. Okay. If then, thank you, Judge. If this court has no questions for me at the time, I would like to save the remaining time for my rebuttal. Okay, that's fine. Thank you. Thank you, judges. Ms. Delgashevan. Mr. Walker? May it please the Court, my name is Grayson Walker. I represent the United States. The district court in this case did not treat the sentencing guidelines as presumptively reasonable. The comment that Mr. Rahman's counsel focuses on, where the judge said he made a slight adjustment due to the bracket he was in, I think shows that the judge did not intend to oppose an above-guideline sentence here as he had at the first sentencing hearing. And the judge explained earlier why he chose to make that reduction. It was an acknowledgment that Mr. Rahman's history and characteristics had improved between the original sentencing hearing and the resentencing hearing. So the court's attention in imposing the 104-month sentence was rightly focused on picking a term of imprisonment that was sufficient but not greater than necessary to advance the purposes of sentencing. The cases that the defense... What do you mean just four months, so off a 108-month sentence? Pretty trivial. And the district court said as much, but it was an acknowledgment that the defendant had made efforts while in prison to improve himself, Judge. The district court also adequately addressed the defendant's mitigating arguments with respect to a possible mental illness and the effects of aging on the risk of recidivism. On the defendant's mental health argument, the defense submitted a mitigation report that did not purport to diagnose the defendant with a mental illness. It simply said that the defendant exhibited symptoms that would be consistent with post-traumatic stress disorder, such as anxiety, anger, and depression. And then the mitigation specialist said that mental health treatment, quote, would hopefully enable the defendant to overcome many of the feelings that have intermittently overwhelmed him. Those statements are far short of a diagnosis of PTSD in this case, much less establishing a causal connection between that undiagnosed condition and Mr. Rahman's long pattern of criminal decision-making. That is why the judge said in response to that evidence, I don't know if mental health treatment would help you. In other words, there was insufficient evidence on that point for the district court to say more. With respect to the effect of aging on the risk of recidivism, the judge acknowledged that as a general matter, there may be reduced risk of recidivism with age. But then the judge pointed out that this defendant had crossed the line again and again and again. So whatever may be true- How old is he? Pardon? How old is he? He's currently 42 years old. At the time he was on pretrial release in this case, he was in his late 30s. So the judge's references to crossing the line, including the bond violations, show that whatever may be true about the effect of aging and recidivism in general didn't apply to this defendant. He showed a clear lack of respect for the law. As to the substance of the 104-month sentence, that is entitled to a presumption of reasonableness on appeal because it falls within the undisputed guidelines range here. The judge did discuss the nature and circumstances of this offense by mentioning the harm that Mr. Armand had posed on himself and others. With respect to Armand's history and characteristics, again, his long criminal record, 12 criminal history points, category 5, is all relevant to this defendant's history and characteristics. At the same time, the judge acknowledged that Mr. Armand had some talents and abilities that could have been used for lawful ends, legal employment. He chose not to. Mr. Walker, can I ask you, we remanded this case about 16 months ago for more specific findings and explanations on the supervised release terms. Correct. On remand, was any issue raised as to any of those matters? Yes. The defense, the pretrial, the probation office filed a supplemental PSR recommending a new set of supervised release conditions. Those were discussed at length at the beginning of the sentencing, and then the court proceeded to consider 3553 arguments and imposed a term of imprisonment that was four months less than the previously vacated term. Were the terms of supervised release much different or identical or? They corrected vagueness problems with the original conditions, as well as delegation problems. Thank you. So, if there are no further questions, the government asks that the district court's judgment be affirmed. Okay, thank you, Mr. Walker. Ms. Delga, do you have anything further? At the original sentencing, a 108-month sentence that Mr. Amant received, the judge mistakenly stated that he was sentencing him within the guideline range. And in this court's remand, this court noted that the sentence was actually above the guideline range. So, it seems like at the original sentencing, at this sentencing, the judge had intention to sentence him within the guideline range. But in this case, we just don't have any adequate statement of reason to explain why it's only one month below the high end of the guideline range. The court did not question that Mr. Amant is suffering from PTSD. And in the sentencing memo, they mentioned many things, evidence that he is suffering, such as nightmare visuals, triggers of traumatic memory, avoidance of situations that may remind him of traumatic events, negative changes in beliefs and feelings, sleep disruption, problems with concentrations. The mitigation report noted also experiencing memories of events that were both intrusive and traumatic, anger, fear of danger, or being victimized. I think bottom line in this case, the court specifically said, I want the sentence to be within the guideline range, and you're doing a little bit better now than you did before. My time is up. Thank you, Your Honors. Okay, thank you, counsel. And the court will.